**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:09-cr-0005-NR |
| | ) | |
| CHRISTINA KORBE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

In 2011, the district judge presiding over this case at the time (Judge McVerry) sentenced Defendant Christina Korbe to over 15 years' imprisonment and ordered restitution in the amount of $2,837,738.00. Since then, she has paid off only about $900.

The government recently discovered that a trust disbursement of $5,915.07 was deposited into Ms. Korbe's inmate account, making a balance of $6,170.35 as of a few months ago. Under the restitution order as well as federal statute, the government now seeks an order authorizing the Bureau of Prisons to pay to the Clerk of Court all funds, except $100, from the inmate trust account.

Ms. Korbe opposes the motion, arguing that: (1) the government has not properly sought modification of the court-ordered restitution payment schedule; (2) the trust disbursement is not a "substantial resource" subject to restitution; and (3) the government has not perfected its restitution lien.

After carefully considering the arguments by both sides, the Court finds: (1) the operative restitution statute triggers an automatic-payment obligation, not requiring modification of the payment-schedule order; (2) the trust

- 1 -

disbursement qualifies as a "substantial resource" subject to restitution; and (3) no separate notice or perfection of a lien is required. The Court will thus grant the government's motion.

## BACKGROUND

On January 18, 2011, Ms. Korbe was convicted of voluntary manslaughter of a federal agent, in violation of 18 U.S.C. §§ 1112 and 1114, and a related offense of using, carrying, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(l)(A)(i) and (iii). [ECF 371]. Judge McVerry sentenced her to 190 months' imprisonment and three years of supervised release. [ECF 371].

On October 5, 2011, Judge McVerry entered an order of restitution, forfeiture, and judgment, ordering Ms. Korbe to pay restitution in the amount of $2,837,738.00 to Brooke Hicks, the surviving spouse of deceased FBI Special Agent Samuel Hicks. Restitution was "immediately due, payable, and owing as of the date of [the] Order." [ECF 421, p. 1, ¶ 3]. The order also set a payment schedule by which 50% of Ms. Korbe's prison-employment salary applies toward the payment of restitution. [ECF 421, p. 2, ¶ 3]. Following her release from custody, Ms. Korbe is to pay at least 20% of her gross monthly income from all sources. [ECF 421, p. 2, ¶ 6]. Judge McVerry also ordered that "[i]f Defendant receives substantial resources from any source, including inheritance, settlement, or other judgment, Defendant is required to apply the value of such resources to any outstanding balance of restitution." [ECF 421, p. 2, ¶ 7].

The government recently discovered that a trust-disbursement check in the amount of $5,915.07 was deposited into Ms. Korbe's inmate account. [ECF 456, p. 2]. The balance in the account was $6,170.35 as of the filing of the

government's motion, with $6,055.19 already encumbered by the Bureau of Prisons.  [ECF 449, p. 2, ¶ 6].

Under the restitution order, as well as 18 U.S.C. §§ 3613(a) and 3664(n), the government moved for an order authorizing the Bureau of Prisons to pay to the Clerk of Court all funds (not just the encumbered funds), except $100, held in Ms. Korbe's inmate account.  [ECF 449].

Ms. Korbe responded, arguing that:  (1) the government has not satisfied the requirements of Section 3664(k), addressing modification of a court-ordered restitution payment schedule; (2) the trust disbursement is not a "substantial resource" under Section 3664(n); and (3) the government has not perfected its restitution lien.  The government replied, and the motion is now fully briefed.

## DISCUSSION & ANALYSIS

### I.    The statutory framework.

There are two statutes that are applicable in this case.  The first statute, passed as part of the Mandatory Victims Restitution Act ("MVRA"), is 18 U.S.C. § 3664.  The MVRA requires the court to award full restitution regardless of the defendant's financial circumstances in certain cases.  The MVRA acknowledges, though, that many criminal defendants have few assets, and so courts have discretion in establishing a payment schedule for a defendant to meet his or her obligations.

The MVRA also recognizes that circumstances can change.  For example, a defendant many have the ability to pay a significant portion of the restitution order, but then can't, such as through the loss of a job.  Or a defendant may come into a large sum of money, such as an inheritance or settlement.

Thus, Section 3664(n) requires that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source,

including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." § 3664(n).

Similarly, Section 3664(k) states that when a defendant experiences "any material change in [their] economic circumstances that might affect [their] ability to pay restitution," the MVRA permits a court, "on its own motion, or the motion of any party, including the victim" to "adjust the payment schedule, or require immediate payment in full, as the interests of justice require." § 3664(k). In order to trigger this provision, a number of procedural steps must be met, which are discussed in more detail below.

The second relevant statute is 18 U.S.C. § 3613, and it provides a mechanism for the government to enforce a judgment imposing any order of restitution. Section 3613(c) provides that an order of restitution under certain federal statutes creates a "lien in favor of the United States on all property . . . of the person fined," just as if the government held a tax lien on the person's property. § 3613(c). "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." *Id.*

Section 3613(a)(1) provides that the government may enforce a judgment imposing a fine or restitution order "against all property or rights to property of the person fined," except for specific exemptions delineated in 26 U.S.C. § 6334, such as items of clothing, certain annuity and pension payments, and a set amount of personal effects. Importantly, cash held in an inmate trust account does not fit within any category of exempt property under Section 3613(a)(1).

## II.    Section 3664(n) triggers an automatic-payment obligation.

The threshold issue for the Court to decide is a procedural one:  must the government comply with the procedural steps under Section 3664(k) in order to seize Ms. Korbe's recent trust-disbursement proceeds?  Ms. Korbe argues that the government's motion does not satisfy the requirements of Section 3664(k), addressing modification of a court-ordered restitution payment schedule.[1]

Section 3664(k) requires the government to take a number of procedural steps to alter a Court-ordered payment schedule, including: (1) providing notification to the Court of a "material change" in the defendant's economic circumstances; (2) providing a certification to the Court that the victim has been notified of the changed circumstances; and (3) presenting a motion to the Court to alter the payment schedule.  *See, e.g., U.S. v. Jackson-El*, 179 F. App'x 147, 149 (3d Cir. 2006) ("Before adjusting a defendant's restitution payment schedule, the District Court must receive certification from the Attorney General that those owed restitution have been informed of the defendant's changed circumstances.").  Ms. Korbe argues that the government has failed to follow these steps, and that its failure bars its ability to modify the payment schedule and collect the money in Ms. Korbe's inmate account.

---

[1] Section 3664(k) states in full: "A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require."

The government counters that it need not proceed through the steps of Section 3664(k) because Ms. Korbe's recent trust proceeds qualify as a "substantial resource" under Section 3664(n). The Court agrees with the government, for two reasons.

First, the restitution order in this case is clear. Although it sets forth a payment schedule, it also contains a provision that tracks the language of Section 3664(n)—*i.e.*, it expressly requires Ms. Korbe to apply the value of any "substantial resources" to pay any order of restitution. [ECF 421, p. 2, ¶ 7]. That provision of the order is not subject to the payment schedule. In other words, the payment of "substantial resources" is already contemplated as part of any court-ordered restitution payment schedule. No modification is necessary to trigger an immediate-payment obligation.

Second, even if the order did not have this provision, the government still doesn't need to meet the requirements of Section 3664(k). There is no independent requirement in connection with Section 3664(n) to clear the hurdles of Section 3664(k). Certainly the government can assert that a windfall is a "material change" and then move for an adjustment of the payment schedule under Section 3664(k). But that does not mean that the government ***must*** file such a motion. Section 3664(n) is a self-executing provision as long as the government shows that a person obligated to provide restitution receives "substantial resources" while incarcerated. *See United States v. Bratton-Bey*, 564 F. App'x 28, 29 (4th Cir. 2014) ("Additionally, a defendant's receipt of a windfall during imprisonment triggers an automatic payment requirement.") (citing § 3664(n)).

Indeed, many courts have authorized the precise type of relief sought here, without requiring the government to seek modification of a restitution order under § 3664(k). *See, e.g., United States v. Brewer*, 699 F. App'x 318, 319

(5th Cir. 2017) (affirming district court's grant of turnover motion under Section 3664(n); stating: "Brewer asserts the Government failed to comply with the notification requirements in 18 U.S.C. § 3664(k), which requires notification of changes in circumstances affecting defendant's ability to pay restitution. The notification requirement in 18 U.S.C. § 3664(k) is inapplicable because the Government's motion was based on 18 U.S.C. § 3664(n)[.] . . . There is no notification requirement for 18 U.S.C. § 3664(n)."); *United States v. Lemberger*, 673 F. App'x 579, 579–80 (7th Cir. 2017) (government's Section 3664(n) turnover request was lawful since defendant was "'a person obligated to pay restitution' who had a 'substantial' sum in his inmate trust account" in the form of $4,650); *United States v. Norwood*, No. 96-232, 2020 WL 773065, at *4 (D.N.J. Feb. 18, 2020) (citing *Brewer* with approval; granting government's turnover motion because of "substantial resources" of $5,931.40 in defendant's inmate account); *United States v. Hester*, No. 10-cr-2967, 2016 WL 1007335, at *2 (S.D. Cal. Mar. 14, 2016) (granting turnover motion under Section 3664(n) when balance in defendant's account was $12,639.30).

While Ms. Korbe argues that the requirements of Section 3664(k) must be met here, the cases she cites stand for a different proposition—they simply state that the requirements of Section 3664(k) and Section 3664(n) ***may*** be met at the same time; they are not required to be.  *See* [ECF 455, pp. 5-7].  Indeed, Ms. Korbe's cases are distinguishable because none of them even evaluated a motion made under Section 3664(n).  In each, a party specifically moved under Section 3664(k) for modification.  *See Jackson-El*, 179 F. App'x at 148-49 (affirming denial of defendant's Section 3664(k) motion; no citation whatsoever to Section 3664(n)); *United States v. Gioeli*, No. 08-cr-240, 2019 WL 6173421, at *9 (E.D.N.Y. Nov. 20, 2019) (denying defendant's Section 3664(k) motion; stating that, if presented in a Section 3664(k) motion, a "windfall" would

constitute a "material change"); *United States v. Foreman-Pottinger*, No. 09–023, 2009 WL 3347116, at *1-3 (E.D. La. Oct. 14, 2009) (denying government's Section 3664(k) motion); *United States v. Bashi*, No. 07-cr-777, 2009 WL 2025332, at *1-2 (S.D. N.Y. July 13, 2009) (same).

In sum, the procedures of Section 3664(k) do not apply here or serve to limit the ability of the government to collect a judgment that qualifies under Section 3664(n).

## III.   The $5,915.07 trust payment is a "substantial resource."

The $5,915.07 trust payment is a "substantial resource" under Section 3664(n).  Ms. Korbe disputes this, and argues that the trust payment is not "substantial" compared to the more than $2.8 million that she still owes.  In other words, Ms. Korbe argues that "substantial" should be defined as it relates to the amount of the restitution award.  The Court finds Ms. Korbe's argument, though creative, unpersuasive based on existing case law, and unsupported by the plain meaning of Section 3664(n), for four reasons.

First, courts applying Section 3664(n) have viewed the word "substantial" in much the same way as the dictionary defines that term—*i.e.*, "of considerable importance, size, or worth."  *Substantial*, Lexico Online Dictionary (Apr. 17, 2020), https://www.lexico.com/en/definition/substantial. (citing as an example: "a substantial amount of cash").  As such, courts have found amounts similar to the approximately $6,000 at issue here to be a "substantial resource" under the statute.  *See, e.g., United States v. Rand,* 924 F.3d 140, 141 (7th Cir. 2019) (accepting argument that approximately $1,684.57 in inmate trust account was "substantial resource" requiring turnover, even on $96 million in outstanding restitution); *Lemberger*, 673 F. App'x at 579–80 (affirming turnover based on "substantial" sum of $4,650 in inmate account); *Norwood,* 2020 WL 773065, at *2 (defendant held

"substantial resources" in the form of $5,931.40 in his inmate account); *United States v. Brown*, No. 01-cr-30123-MJR, 2017 WL 3493021, at *3 (S.D. Ill. Aug. 15, 2017) (finding approximately $4,500 in inmate account was "substantial resource" and granting motion to turn over $4,060 from the account).

Second, similarly, courts have viewed windfalls or sudden injections of monies to be a "substantial resource" under the statute. That is, several courts have found that Section 3664(n) "refers to windfalls or sudden financial injections . . . that become 'suddenly available'" to the defendant. *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) (citation omitted); *United States v. Poff*, 781 F. App'x 593, 594 (9th Cir. 2019) (agreeing with *Hughes*); *Bratton-Bey*, 564 F. App'x at 29 ("Additionally, a defendant's receipt of a windfall during imprisonment triggers an automatic payment requirement."). Ms. Korbe cannot dispute that the $5,915.07 trust disbursement, paid following the death of the individual establishing the trust, is a sudden financial injection or a windfall.

Third, the plain text of the statute does not support Ms. Korbe's definition of "substantial." Ms. Korbe interprets the word "substantial" as being relative to the restitution amount. There is no basis for this reading in the statute. Rather, the statute appears to view what is or isn't "substantial" from the viewpoint of the defendant's income while incarcerated. Section 3664(n) refers to a defendant receiving substantial resources "during a period of incarceration." § 3664(n). Since the statute specifically refers to "during a period of incarceration," the word "substantial," if relative to anything, is relative to the defendant's income in prison. Here, Ms. Korbe has stated that, in prison, she "earns 17¢ per hour and works as closely as possible to the maximum allowable 140 hours per month." [ECF 455, p. 12]. That equates to $23.80 per month. When she is allowed to work as a "suicide companion" in

prison, which is "irregular," she earns only 40¢ per hour.  [ECF 455, p. 12].
From this perspective, a one-time check for $5,915.07, when compared to Ms.
Korbe's prison income, is a "substantial resource."

Fourth, the Court's interpretation of the MVRA aligns with the purpose
of that statute.  As the Eighth Circuit has noted, Congress's intent behind the
MVRA was that "restitution be a compensatory remedy from the ***victim's
perspective***."  *United States v. Petruk*, 484 F.3d 1035, 1038 (8th Cir. 2007)
(emphasis added).  Thus, when defining what is or isn't "substantial" under
the MVRA, the Court is to look at the issue from the victim's perspective (here,
the widow of an FBI agent), not the defendant's perspective.  To be clear, the
Court is sympathetic to Ms. Korbe's argument that she would like to use the
money to facilitate her reentry into society and support her two children and
elderly mother.  [ECF 455, p. 12].  Those goals are noble.  The law, though,
requires the Court to look at the victim.  The restitution order here, including
the immediate turnover of the trust payment, will be substantial to
compensate Ms. Hicks for the very real loss of income caused by the death of
her husband.

Because the trust payment received by Ms. Korbe is "substantial," it is
subject to turnover under Section 3664(n).

## IV.  The Court can order turnover of Ms. Korbe's entire account, including any amounts that don't otherwise qualify under Section 3664(n).

The $5,915.07 trust payment is a substantial resource, but there still
remains the matter of an additional $155.28, approximately.  That is, the
government's motion seeks a turnover of all amounts currently in Ms. Korbe's
inmate account, less $100.  Thus, beyond the trust proceeds, that amounts to
an additional $155.28, at least as of a few months ago.  That amount, on its

own, is probably not enough to be "substantial" under Section 3664(n), or to qualify as a "material change" under Section 3664(k).  And Ms. Korbe argues that because she is paying under a payment plan and has not defaulted, the Court has no authority to modify that plan, even for an extra $155.28 or so.

The federal courts seem split on this issue.  One line of cases, upon which Ms. Korbe relies, appears to say that where a district court imposes a restitution order with a payment plan, the payment plan controls.   The government is not allowed to accelerate payments, without any independent authority (such as under Sections 3664(n) or 3664(k)).  *See United States v. Villongco*, No. CR 07-009, 2016 WL 3747508, at *9 (D.D.C. July 11, 2016) (collecting cases).

The other line of cases says that where a restitution order states that restitution is due "immediately," any payment plan simply acts as a baseline. The government can still, at any time, collect on the entire amount of the restitution order. *See United States v. Diehl*, 848 F.3d 629, 633–34 (5th Cir. 2017) (collecting cases).

The Court believes that the Third Circuit holds this latter view.   In *United States v. Shusterman*, 331 F. App'x 994 (3d Cir. 2009), a panel of the Third Circuit, in an unpublished opinion, considered a restitution order of approximately $11 million, which was immediately due, but also included a payment plan.  The government moved to garnish properties of the defendant to cover the restitution, and the defendant argued that that was inappropriate in light of his payment plan.

The Third Circuit agreed with the government, and held that because the restitution order stated that restitution was due "immediately," the payment plan was no bar to the government collecting amounts above and beyond the payment plan.  *Id*. at 997.

- 11 -

Although this Court is not obligated to follow an unpublished opinion of the Third Circuit, the Court will do so here, as it is the best (and only) authority from the Third Circuit on this issue.  From a review of the case law from around the country, it also appears to be the majority view on the issue.  *See, e.g., Diehl,* 848 F.3d at 633–34; *Lemberger,* 673 F. App'x at 580; *United States v. Blondeau,* 5:09-cr-00117, 2011 WL 6000499, at *4 (E.D.N.C. Nov. 1, 2011) ("Defendant reads the judgment too narrowly and ignores its express language making the restitution award 'due and payable in full immediately.'"), *adopted by* 2011 WL 6001281 (E.D.N.C. Nov. 30, 2011); *United States v. James*, 312 F. Supp. 2d 802, 806-07 (E.D. Va. 2004) (holding installment plan does not restrict government from garnishing non-exempt assets where the debt "is due and payable immediately").  Following *Shusterman* and the majority view, this case is no different.

Specifically, the Court has the authority to order immediate payment of approximately $155.28 because Judge McVerry ordered in 2011 that restitution was "immediately due, payable, and owing[.]"  [ECF 421, p. 1, ¶ 3].  Thus, the approximately $2.8 million is already due, and has been immediately due since 2011.  Ms. Korbe's payment plan doesn't alter or limit the government and victim's rights.

As one district court in this Circuit, citing *Shusterman*, has found, where an order says that "restitution is due immediately," the "order extends to the entire amount due."  Any separate payment plan simply sets a floor, not a ceiling.  *United States v. O'Rourke*, No. 2:10-00235, 2011 WL 3035394, at *2 (D.N.J. July 25, 2011) ("[W]hen a district court determines at sentencing that 'restitution is due immediately,' its order extends to the entire amount due. Court specified installment programs establish *floors* in regard to Defendant's payments, but at all times the debt is due and the Government may move to

- 12 -

garnish that entire amount if funds are available.") (citing *Shusterman*, 331 F. App'x at 997) (emphasis in original).

And because the installment plan acts as simply a floor, the payment schedule may be accelerated; a default is not required in order for the government to seek immediate payment. *See Brown*, 2017 WL 3493021, at *2–3 (authorizing turnover of inmate trust account funds despite defendant's claim that he "faithfully participated in the Inmate Financial Responsibility Program" and had not missed any payments); *United States v. Muse*, No. JFM-03-554, 2015 WL 4397106, at *3 (D. Md. July 16, 2015) ("The statutes setting forth the practices and procedures for the collection and enforcement of criminal fines and restitution also do not require default.") (citations omitted).

Further bolstering the Court's conclusion is the language of the restitution order imposed by Judge McVerry in this case. The payment-plan provisions of the order are clearly meant to be a floor, or a minimum, as to Ms. Korbe's obligations. Paragraph 3 of the order states that Ms. Korbe is to "initially . . . fund[]" her payment obligation with 50% of her inmate earnings. [ECF 421, p. 2, ¶ 3]. And Paragraph 6 states that, once Ms. Korbe is released, she is to pay "not less than . . . 20%" of her gross monthly income. [ECF 421, p. 2, ¶ 6]. This language ("initially fund" and "not less than") clearly sets minimums, not caps.

In sum, the government has the authority to collect on amounts above and beyond those covered by Ms. Korbe's payment plan, including the additional approximately $155.28 it now seeks.[2]

---

[2] This may seem like a harsh result, at first glance. But recall that federal law exempts many categories of property and income from restitution. Under Section 3613(a)(1), a restitution order may not be enforced against the following, regardless of how much is due: wearing apparel and books; fuel, furniture, and personal effects; books and tools of a trade, business, or

**V.     No separate notice or perfection of a lien is required.**

Finally, no separate notice or perfection of a lien is required, as the plain language of the statute provides that this is an automatic lien.  Under Section 3613(c), an order of restitution "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person were a liability for a tax assessed under the Internal Revenue Code of 1986.  The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated[.]" § 3613(c).

In other words, "a restitution order is a lien in favor of the government on 'all property and rights to property' of the defendant and is treated as if it were a tax lien." *United States v. Sayyed*, 862 F.3d 615, 618 (7th Cir. 2017) (quoting § 3613(c)).  "This means the government steps into the defendant's shoes, acquiring whatever rights the defendant himself possesses." *Id.* at 619 (cleaned up).  Thus, there is no requirement for the government to record or perfect a lien as against the defendant herself.  *See, e.g., United States v. Smith*, 768 F. App'x 926, 932 (11th Cir. 2019) ("Generally speaking, the MVRA does not require the government to record the lien for it to gain priority over third parties, but it does protect certain limited classes of third-party interest holders" as described in Section 3613(d)).

The lien is self-executing, despite Ms. Korbe's argument to the contrary. [ECF 455, p. 9].  While Ms. Korbe relies on *United States v. Kollintzas*, 501 F.3d 796 (7th Cir. 2007), that case only states the obvious—under Section 3613(d), a restitution "lien is subsequently perfected when a notice of lien is

---

profession; unemployment benefits; undelivered mail; certain annuity and pension payments; workmen's compensation; judgments for the support of minor children; and certain service-connected disability payments.  In this way, a defendant is protected against the accelerated seizure of certain basic and essential property and income.

filed." *Id.* at 802 (citing § 3613(d)).  However, Section 3613(d) relates to the effect of filing a notice of lien as to certain third parties, such as "any purchaser, holder of security interest, mechanic's lienor or judgment lien creditor[.]"  § 3613(d).  It has no relevance to the defendant herself.[3]

Accordingly, the restitution order here is a self-perfecting lien, and the Court can order an immediate turnover of Ms. Korbe's inmate account, without notice or recording.

### CONCLUSION

For all these reasons, the government's motion for order authorizing the Bureau of Prisons to pay to the Clerk of Court all funds, except $100, currently held in Ms. Korbe's inmate trust account is GRANTED.  An appropriate order follows.

DATED this 21st day of April, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge

---

[3] Ms. Korbe further cites *United States v. Villongco*, No. 07-9, 2017 WL 2560905 (D.D.C. June 13, 2017), which is likewise distinguishable.  [ECF 455, p. 9]. That case does not involve perfecting a restitution lien as to a defendant; rather, it describes the difference between liens and writs of garnishment, stating: "that *all* a defendant's property may be subject to a lien does not mean that *all* a defendant's property may be garnished by the government."  *Id.* at *4 (emphasis in orginal).